My name is Kathleen Holt and I am here on behalf of Mr. Frohm. I'd like to reserve two minutes of rebuttal time, please. Thank you. I propose to discuss three issues. The ALJ's improper consideration of the treating physician evidence, the ALJ's improper consideration of the side effects of medication, and the lack of substantial evidence to support the ALJ's credibility decision. Addressing the treating physician, the treating doctors in this case, Dr. Hanscom, Dr. Taubin, and Dr. Weinstein, provided multiple medical reasons to explain Mr. Frohm's pain based on objective evidence before them and in this record. They offered that the low back pain could have been caused by facet disease, facet joint arthritic change, or scarring around the site of the two surgeries that Mr. Frohm had had on his lower back. The cervical pain could have been caused by stenosis, compressing the spinal cord. The ALJ did not consider any of these opinions. There is substantial medical evidence in the record from 1996 into 1999 that consistently chronicles Mr. Frohm's pain complaints and his treating doctor's medical explanations for that pain. The ALJ has improperly chosen not to mention or analyze this evidence in his decision. Addressing the pain medications, there is no debate by any of the medical professionals in this record but that Mr. Frohm was taking absolutely massive amounts of pain medications. Mr. Frohm stated that this impaired his concentration and made him drowsy, requiring him to lay down to rest and to nap. The record illustrates only sporadic attempts at activities punctuated by this need to rest. There is no evidence in the record to support the ALJ's conclusion that Mr. Frohm could counteract these effects of his medication simply by staying active. The ALJ only asked Dr. Linder, the medical expert at the hearing, if a person taking these opiates would typically fall over if he were walking down a hallway. That does not equate to a person being able to stand and walk for six hours in an eight-hour workday on a consistent basis, as is required by light work. Dr. Taubin, a pain specialist and treating physician, stated that Mr. Frohm was using the opiates that were prescribed to him responsibly. There was no abuse or misuse of these opiates. Addressing the credibility, the record before this court contains four years of consistent evidence of Mr. Frohm hurting himself at every activity that he attempted in his desire to lead a normal life. He was not able to sustain any activity that he did. In the Smolin case, this court said that a person should not be penalized in a disability context for attempting to lead a normal life. The most that this record shows is Mr. Frohm accomplishing four hours of activity in a day. Even then, the record shows that this would set him back and require more pain medications. Residual functional capacity is defined under Social Security rulings as the most that a person can do, not the least. Mr. Frohm's residual functional capacity is less than that needed to perform regular and continuous employment, which is defined in the Social Security rulings as eight hours a day, five days a week, or an equivalent schedule. Sustaining work is impossible for Mr. Frohm. The record shows that his activities are sporadic, inconsistent, and unpredictable. As this court said in Lester, occasional symptom-free periods, even the sporadic ability to work, are not inconsistent with disability. In conclusion, because the treating doctors in this case offer legitimate opinions to support Mr. Frohm's pain complaints, and because his pain, the side effects of medications, and the sporadic activity levels leave Mr. Frohm with a residual functional capacity where he is unable to sustain regular and continuous employment, he should be found disabled pursuant to the Social Security Act. Let me ask you this about the credibility findings. Can you give me specific reasons why we should disregard the credibility findings by the ALJ? That is to say, he goes through various things. For example, he says he went inner-tubing and so on. Are there specific reasons why we should disregard the detail that the ALJ gives for finding a lack of credibility? Yes, Your Honor. The detail that the ALJ gives in each example that he provides is clarified in the record. He has chosen to ignore the explanations for each example. And if I can give an example of that. Would you please? The inner-tubing occurred eight months before Mr. Frohm became disabled. That was an example of an activity that he enjoyed doing. However, he became disabled. That was in January of 1996. And are we given the detail as to what inner-tubing means? I just assumed it was up in Whistler, so he must have been on a snow hill. And that was in January of 96. And he was working 60 hours a week at that point. In August of 96 was when he had the MRI and immediately had the laminectomy. The other examples in the record that the ALJ gives, for example, Mr. Frohm taking car trips. Well, there's specific explanations that go along with the fact that he didn't just drive to Arizona. When he went to Arizona, he had to stop every hour to get out for half an hour. He laid down in the car 25 to 30 percent of the time during that trip. When he went to Disneyland with his family, his family would go over to the park, and he would join them for an hour. Then he would have to go back to the hotel and rest. This is all evidence in the record. When he went to a firefighter's convention in California, he had to take massive amounts of additional medication in order to endure the plane flight. And then when he got down there, he could only go to the convention for an hour or two before he had to go back to his hotel room and rest. There is one example in there of him roughhousing with his son. One example over a period of three of four years in the record of him doing something with his child. There's examples of him lifting boxes. We don't really know how heavy those boxes were. Now, the ALJ says they are heavy boxes. How does the ALJ know that those are heavy boxes? He calls them heavy boxes. Mr. Fromm does. So Mr. Fromm tells his doctor, I hurt my back when I lifted a heavy box. Now, these activities of Mr. Fromm's were probably ill-advised. He probably shouldn't have been lifting these things. But in every instance in the record, whenever he attempted any of these activities, he hurt himself. Okay. Can you help me also on apparently he's doing some work sporadically during the period for which he's claiming disability. Among other things, the ALJ talks about a new job with the armed services as a consultant. Can you describe that job for me? I can, Your Honor. And unfortunately, that never did materialize. So, in fact, he did not have that job. Right. He was expecting, he was hoping for it. He was, as the record shows, he was very optimistic. He was very goal-oriented. And he had, in July of 98, he told Dr. Tauben, and this is at 255 in the record, that he had a big contract that was set for October of 98 that never materialized. Was this here at Fort Lewis? This was the Fort Lewis job. Correct. And then he was hoping it would appear later. And the doctors thought that he was going to be able to go back to work because he wanted to so badly. But it wasn't, it just wasn't to be. Okay. Thank you. Thank you. Thank you, Kim. Thank you. May it please the Court, my name is David Burdett. I appear on behalf of the defendant appellee, the Commissioner of Social Security in this matter. Your Honors, in spite of the fact that they represent only a tiny fraction of the cases that come before the Commissioner of Social Security applicants, this Court has had quite a few occasions to rule on Social Security matters that come up before it. And every one of those cases begins, the opinion begins with a recitation of the standard, which is the standard of substantial evidence. The rule of substantial evidence, as you know, the ALJ is only to be overturned in his role of fact finder if no rational mind could have found on the basis of the facts before him what he found. Now, it's the Commissioner's position that there's no possible way that anyone can say that no rational mind could have found. You know, as long as we're on the boilerplate standards, could you recite the standard that the ALJ must satisfy to find a lack of credibility? It has to be. He has to provide clear and convincing reasons, Your Honor. And we believe. And does it say anything more about how specific the reasons must be? The clear and convincing reasons supported by substantial evidence. There must be specific and legitimate reasons. The reasons must be clear and convincing. Just as long as we've got all the boilerplate in front of us. A little more boilerplate. What, Your Honor? What is the role and test for applying pain as a factor in disability in the Ninth Circuit? Pain can be an impairment, Your Honor. And do you think the ALJ understood that when he said that, accordingly, the purpose of subjective testimony when he's discussing pain would logically appear to be to aid the adjudicator in the resolution of close questions on the issue of imposed limitations, not to provide an alternative to meeting the statutory requirement of objective evidence? Subjective testimonial evidence would thus contribute to the resolution of ambiguities in the evidence, which is the province of the commissioner. Do you think that reflects the test that when there is an objective injury or objective condition, then we can find someone disabled because of the what is considered excessive pain that's subjective? Well, I think if I understand the question, Your Honor, I think that definitely this court can find the person disabled when there is. No, no, I ask whether you think the ALJ here understood the test and the role of pain when he said that all it does is to help you resolve ambiguities in the evidence and doesn't itself provide a basis for making a finding. Well, Your Honor, he may not have. But I still think that this person has not met his burden as far as proving that he can't perform work. Well, once we're on standards, let me ask you another thing about this report. And tell me if you can explain this, because I really don't understand it. Assessing credibility under the Social Security Act is, therefore, not a matter solely of whether claimant is a believable witness. Subjective complaints can be sincere, yet not credible. Now, what does that mean? Well, I don't think there's a problem with that, Your Honor. There's a tendency on the part of claimant's representatives to say that, well, you're calling me a liar if you ever find that any of my complaints are not credible. I don't think that's necessarily the case. I don't think that every time the commissioner finds a complaint not wholly credible, they're pointing the finger and saying, you are a liar. What do you mean when we're talking about subjective complaints, is what he says? Well, the subjective complaint, I feel pain. It can be sincere, but not credible. What does that mean, that you think you feel pain, but you don't? Oh, I think that it means that people can sincerely believe that they're impaired, but they're not in fact in pain. Can they believe that they have a subjective complaint of pain? So we have the two things, the objective condition and then the subjective pain. And he comes in and says, I feel this pain. And he then applies the credibility test and says, well, you can really be sincere that you think you feel pain, but you're not credible. Now, I don't understand that test, but that seems to be the credibility standard that this ALJ applied. Well, I don't know, Your Honor. Objective impairment versus subjective pain. I would say that a person can believe that they have an objective impairment and they don't, in fact. Whether they can believe that they feel pain and they don't, I don't know about that. Well, I neither. I don't know that I can back that up. But regardless of that, I do think that whatever standard we're going to be applying to the credibility, I do think that clear and convincing reasons are supplied in the form of the activities that the claimant was undertaking. One of the strenuous, I think it's fair to characterize them as fairly strenuous activities that he undertook around the house that he said caused him pain when he tried to do it.  He was lifting heavy boxes by his own account to the doctor. He was roughhousing with his son. He attempted to move a refrigerator. Now, albeit that was evidently unsuccessful for him, but if you're claiming that you're disabled. Unsuccessful in what sense? He couldn't move it or it hurt or both? Well, I don't know how far he moved it, but he hurt himself trying to move it. So that maybe supports him rather than supports the ALJ? Well, I don't think so, Your Honor. I think it does support the ALJ because my point is that if you claim that you're disabled by back pain, you know, how is it reasonable to even think that you're going to move a refrigerator? Well, he may be mentally disabled, too. Wow. He may have been stupid. The fact that he finds it too much to do heavy work, like moving a refrigerator, doesn't seem to me very probative that he couldn't do light work. Well, no, Your Honor. And what the ALJ is saying here is that he can do light work and that the ALJ is not denying that he has this impairment. Without doubt, he has a backache, and that's what the doctors have said. And it's going to limit him from doing heavy work. It's going to limit him from doing medium work. But it's not going to limit him from doing light work per the ALJ or per any of his doctors because no doctor has come out and said, this gentleman is disabled. What they say and what the plaintiff is arguing for in the statements of Dr. Weinstein and Dr. Tobin and Dr. Hanscom is that he has this impairment. He has degenerative changes of the discs. He has facet disease above the fusion that occurred in his surgery. He could have that impairment.  But that doesn't mean that he's disabled. The ALJ made this judgment himself without calling the vocational expert, which is one of the other issues the counsel didn't discuss because she prefers to reward benefits rather than remand. But as to that issue, all he said in the brief was that they hadn't raised it in the district court. And the library's taxes pages would seem to show that they did and that you answered it in the district court. Well, the argument, Your Honor, is that they haven't raised it or they're raising it as waived because they didn't object to that finding in the magistrate's report and recommendation. So that's my argument. My argument is that by not objecting to it, that you should deem that it's waived. And so what they have attached to their reply brief or what is when they raised it before the magistrate. Yes. Rather than you said, they didn't again raise it before the district. They didn't object to the report and recommendation of the magistrate. And so I think that it's waived after that or that at least that it should be waived. Now, we have Greenhouse cited on that issue in plaintiff's brief. And I think that the question is still open and that Greenhow really doesn't control. I mean, U.S. v. Hardesty, this court sitting on Bonk directly overruled Greenhow. You have I know you're familiar with this. You have the the Britt line and the McCall line. Britt says that, no, it's not waived. Judge Kaczynski and Greenhouse said we're going to go with that because it successfully opposes the law of the circuit. U.S. v. Hardesty overruled that endeavor because they the the Bonk panel said that that wasn't a legitimate method of choosing between rules. And then we come to the case of Martinez v. Ilst, where the court said that that it could be waived, but it didn't have to be waived. But that a failure to object to the magistrate's report should be deemed as a waiver unless it will work in inequity. And I don't think it will work in inequity here because.   And one's not going to be able to speak to the individual to say, you know, Oh, looks prefer to assume the proceeding! Oh, yeah, because Oh yes. Yes, Your Honor. I said why not because I don't because I think that on the facts, this case is a really strong one for the A.L.J., regardless of whether the A.L.J. rambled on a little bit and made some pronouncements about the subjective nature of pain that can't be defended. I still think that on the facts of this case, there's no way that we can say that no one could have found that this man can work. A man who does a lot of strenuous physical activities, a man who is claiming to be disabled by backache, but took at least five interstate driving trips during the. Here's my problem with this case. I'll state it in a slightly abstract way and try not to personalize it to this A.L.J. overly. As I read the A.L.J.'s boilerplate, he misstates the law. And the passages that Judge Reinhardt read aloud are examples of that. What am I supposed to do if I think there may be substantial evidence to support the A.L.J., but that the A.L.J. has misunderstood the law? Do I remand it for a hearing to a different A.L.J. who states the law properly so that I can then trust that he's applied the proper standard to these facts? Do I disregard his findings because he misapplied the standard and therefore I can't trust what he did? What should I do if he misstates the law and I think he therefore misapplied the law? Well, I think that you're allowed to look at the record and see that there's substantial evidence in support of the A.L.J.'s decision. But what happens if I'm not confident that as he evaluates it, he applied the right legal standard? If he applies the right legal standard, there's substantial evidence in the record to support the application of that standard. My job's over. He's fine. But if he's applying the wrong legal standard, how can I be confident that if he had applied the right legal standard, he would have come to this conclusion? Well, Your Honor, I think if you're just not confident that A.L.J. Dethloff is applying the proper legal standards, then I think that the necessary course is to remand it with an instruction for a different A.L.J. to look at it. Okay. And would you support that in this case? Well, I'm in here arguing for affirmance, Your Honor, because I think that's the right outcome. But if we – I think that under the point of view that you described, that's the appropriate outcome. Okay. Thank you. Thank you, Your Honor. Counsel discussed ambiguities in the evidence. The A.L.J. is entitled to resolve ambiguities in the evidence. However, again, we have attempted to explain all of the activities and the reasons why Mr. Fromm was not able to consistently engage in any activities. Again, it was ill-advised for him to do some of the activities that he did, but he was not able to do them for more than a very short period of time. Could you answer Judge Gould's concern that what this shows is that he has a bad back and that he can't do heavy work or medium work, but he could do sedentary work or light work? It's a residual functional capacity issue, Your Honor, in that the law of Social Security requires a person to be able to sustain eight hours a day, five days a week, or an equivalent schedule. Mr. Fromm is able, he has good days and he has bad days, as he says in the hearing. And he has up to three good days a week, but it's very unpredictable. And he's not going to know when he's going to be able to be at work or not be at work because of his back pain, and that an employer would require somebody to be available 40 hours a week on a consistent basis. That's why Mr. Fromm would not be able to engage in light work activity. Thank you. Thank you. Thank you. Thank you both very much. The case to be argued will be submitted. The next case on the calendar is Alex versus Barnhart.
judges: Reinhardt, W Fletcher, Gould